Mark Brnovich
Attorney General

Michael K. Goodwin, Bar No. 014446
Assistant Attorneys General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Telephone:  (602) 542-7674
Facsimile:   (602) 542-7644
Michael.Goodwin@azag.gov

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brittney Fountain,<br><br>              Plaintiff,<br><br>vs.<br><br>State of Arizona, et al.<br><br>              Defendants. | Case No:  CV-21-00356-JJT<br><br>**MOTION TO DISMISS** |

### Introduction

Plaintiff is a correctional officer at the Arizona Department of Corrections, Rehabilitation, and Reentry.  She alleges that during her employment with the Department, she was sexually assaulted by Defendant Jason McClelland.  But her lawsuit does not stop with McClelland.  In Count Three, she seeks to impose liability on Warden Jeffrey Van Winkle, former Director Charles Ryan, and Director David Shinn—three State officials who had nothing to do with the alleged assaults.  The claims against them are legally and factually insufficient.  Under Rule 12(b)(6), these Defendants move to dismiss the Complaint insofar as it seeks relief against them.

First, the Complaint contains no allegations that Warden Van Winkle, former Director Ryan, or Director Shinn engaged in purposeful discrimination, as is required to state a claim that they each individually violated Plaintiff's right to equal protection. Second, the alleged actions of these officials did not violate any clearly established

constitutional right.  Defendants Van Winkle, Ryan, and Shinn are therefore entitled to qualified immunity.

## I.   Factual Allegations

In 2018, the Department hired Plaintiff as a correctional officer.  (Compl., ¶ 2.) She was assigned to ASPC-Florence Central.  (*Id*., ¶ 33.)  Defendant Jason McClelland, a correctional sergeant, also worked at the prison.  (*Id*., ¶¶ 15, 21.)  Plaintiff alleges, "on information and belief, it was well known among prison staff, including other sergeants and supervisory personnel, that Defendant McClelland was overly flirtatious and inappropriate in the workplace and that he had sexual relationships with several staff members over the years."  (*Id*., ¶ 26.)

In January or February 2019, Plaintiff was working in the control room of Kasson Unit at the prison.  (*Id*., ¶ 35.)  Defendant McClelland entered the room, sat down behind her, and grabbed her breast over her shirt.  (*Id*., ¶ 36.)  While continuing to touch Plaintiff's breasts, McClelland undid his pants, exposed himself, and placed Plaintiff's hand on his penis.  (*Id*., ¶ 37.)  McClelland continued to assault Plaintiff but stopped when another officer entered the sally port just outside the control room.  (*Id*., ¶¶ 38-41.) Plaintiff did not report the incident.  (*Id*., ¶ 46.)

In September 2019, McClelland took Plaintiff to the Tactical Support Unit building.  (*Id*., ¶ 42.)  Once there, he turned off the lights, blocked the door, and prevented Plaintiff from leaving.  (*Id*., ¶ 44.)  McClelland then removed her clothing and allegedly had nonconsensual sexual intercourse with her.  (*Id*., ¶ 45.)  Plaintiff did not report the incident.  (*Id*., ¶ 46.)  She did not report the assaults because she feared retaliation and was concerned that she would not be believed.  (*Id*.)

Shortly after the assaults, McClelland started to spread rumors about Plaintiff, implying that she was sexually promiscuous.  (*Id*., ¶ 47.)   Other male staff members began to make sexual comments to her.  (*Id*., ¶¶ 48-49.)

On July 15, 2020, a nurse employed by the prison's healthcare contractor reported that she had been sexually assaulted by Defendant McClelland.  (*Id*., ¶ 61.)   The

2

Department's Criminal Investigations Unit (CIU) began an investigation. (*Id.*) During the investigation, Plaintiff and several other female corrections and medical employees came forward to report their experiences of being harassed or assaulted by McClelland. (*Id.*, ¶ 62.) The CIU investigator interviewed Plaintiff. (*Id.*, ¶ 63.) Plaintiff was instructed not to discuss the investigation. (*Id.*, ¶ 74.)

After the investigation was underway, the Department transferred McClelland to another prison complex, ASPC-Eyman. (*Id.*, ¶ 69.) On August 6, 2020, McClelland was arrested. (*Id.*, ¶ 70.) Two days after the arrest, Plaintiff began an extended leave from work. (*Id.*, ¶ 80.) People posted articles about McClelland's arrest on Plaintiff's social media page. (*Id.*, ¶ 72.) According to the Complaint, Jeffrey Van Winkle, the Warden at ASPC-Florence Central, told someone that Plaintiff should stay off social media. (*Id.*, ¶ 73.)

On August 11, 2020, McClelland resigned from the Department. (*Id.*, ¶ 76.) Shortly thereafter, he was indicted on multiple charges. (*Id.*, ¶¶ 77-78.)

Plaintiff filed this action asserting three claims for relief. Count One is a sexual harassment claim under Title VII against her employer, the State of Arizona. Count Two is a claim under 42 U.S.C. § 1983 against McClelland alleging that he violated Plaintiff's right to equal protection under the Fourteenth Amendment. Count Three is a § 1983 claim against Van Winkle, Ryan, and Shinn. Plaintiff alleges that they deprived her of equal protection by their ratification of sexual harassment. Van Winkle was the Warden at ASPC-Florence. (*Id.*, ¶ 5.) Ryan served as the Department's Director from 2009 until his retirement in September 2019. (*Id.*, ¶ 6.) In October 2019, Shinn became the Department's Director. (*Id.*, ¶ 7.)

**II.   Legal Discussion**

    **A.   Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To avoid a Rule 12(b)(6) dismissal, a complaint must contain sufficient factual matter to "state a claim to relief that is

3

1 plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Dismissal is
2 appropriate where the plaintiff's complaint lacks a cognizable legal theory, lacks
3 sufficient facts alleged under a cognizable legal theory, or contains allegations disclosing
4 some absolute defense or bar to recovery.  *See Balistreri v. Pacifica Police Dep't*, 901
5 F.2d 696, 699 (9th Cir. 1988); *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1
6 (9th Cir. 1997).  In assessing the sufficiency of a Complaint, the Court must accept well-
7 pleaded allegations as true but need not accept as true "allegations that are merely
8 conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Daniels-Hall*
9 *v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th cir. 2010).

### B. Van Winkle, Ryan, and Shinn are Entitled to Qualified Immunity.

Under the doctrine of qualified immunity, public officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When considering a qualified immunity defense, courts should determine whether the defendant violated a constitutional right and if so, whether the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  If the court determines that there has been no constitutional violation, there can be no § 1983 liability and the defendant "has no need for immunity." *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012).  Courts have discretion to decide which of the two prongs of the qualified immunity analysis they should address first. *Pearson*, 555 U.S. at 236.  For a plaintiff to overcome a qualified immunity defense, both prongs must be satisfied. *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017).

**1. Step One: Plaintiff's Allegations are Insufficient to Establish that Van Winkle, Ryan, or Shinn Violated her Right to Equal Protection.**

**a. Invidious Discrimination, *Iqbal*, and Supervisory Liability**

4

Section 1983 provides a right of action for a deprivation of constitutional rights. To state a claim under § 1983 for a violation of the Equal Protection Clause, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998); *see also Iqbal*, 556 U.S. at 676 (holding that plaintiff claiming unconstitutional discrimination in *Bivens* action must "plead and prove that the defendant acted with discriminatory purpose"). "[P]urposeful discrimination requires more than 'intent as volition or intent as awareness of consequences.'" *Id*.

There is no vicarious liability under *Bivens* or § 1983. *Id*. Instead, an official may be held liable only for his or her own conduct. *Id*. at 677. Thus, when multiple defendants are named in a *Bivens* or § 1983 action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 676.

*Iqbal* rewrote the rules on supervisory liability under § 1983. The plaintiff there, a Pakistani Muslim, had been arrested and detained in severely restrictive conditions following the attacks of 9/11. He filed suit against his jailers and various officials, including Attorney General John Ashcroft and FBI Director Robert Mueller, claiming unconstitutional discrimination on the basis of race, religion, and national original. *Id*. at 666. He alleged that he was beaten and abused by his jailers. *Id*. at 668. More to the point, he alleged that Ashcroft and Mueller "approved" the policy of holding the 9/11 detainees in those conditions; that they "each knew of [and] condoned" the harsh conditions; that Ashcroft was the "principal architect" of the policy; and that Mueller was "instrumental" in its implementation. *Id*. at 669.

The Supreme Court held that the complaint failed to plead facts sufficient to state a claim against Attorney General Ashcroft and FBI Director Mueller for unconstitutional discrimination. A supervisor's knowledge and acquiescence in a subordinate's discriminatory purpose was insufficient, the Court said. *Id*. at 677. "In the context of determining whether there is a violation of a clearly established right to overcome

5

1 qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities." *Id*. Most of the allegations concerning Ashcroft and Mueller were too conclusory to be taken as true. *Id*. at 680-81. The complaint did not allege facts that they purposefully discriminated. *Id*. at 681-82.

### b. *Iqbal*'s Application to Count Three

The claims against Warden Van Winkle, former Director Ryan, and Director Shinn are premised on a ratification theory. Plaintiff makes the same allegations against all three officials. The Complaint alleges that they were "final policymakers" for the Department (¶ 98); that they "knew of" the alleged culture and atmosphere of sexual harassment at the prison (¶¶ 99, 101); that they "knew that Defendant McClelland had a propensity for inappropriate sexual behavior toward female co-workers and subordinates, including Plaintiff (¶ 100); that they knew employees were reluctant to use the complaint process to report sexual harassment (¶¶ 102-03); and that they "acquiesced in and ratified" these customs and practices. (¶¶ 104-05.)

In other words, Plaintiff's ratification claim is based on allegations of knowledge and acquiescence—exactly the type of allegations that the *Iqbal* Court held were insufficient. The Court specifically rejected the argument that a supervisor's knowledge and acquiescence in a subordinate's discriminatory conduct amounts to invidious discrimination by the supervisor. 556 U.S. at 677. *Iqbal* teaches that a discrimination claim against a supervisory official requires allegations that the supervisor acted with a discriminatory purpose, that is, a specific intent to discriminate. *Id*. at 676-77. Plaintiff's Complaint contains no such allegations.

Whether ratification is a viable theory of individual liability is questionable. Ratification is best understood and generally urged as a theory of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). One way to establish *Monell* liability is to show that a local government official with final

1 policymaking authority ratified a subordinate's unconstitutional decision or action and
2 the basis for it. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citing *City
3 of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Plaintiff's allegations that Van
4 Winkle, Ryan, and Shinn are policymakers who somehow ratified Defendant
5 McClelland's alleged conduct suggests she is attempting to impose liability on them
6 under a theory applicable to municipal liability.

7 In *Hunt v. Davis*, 749 F. App'x 522 (9th Cir 2018), an employee in the sheriff's
8 office brought a § 1983 action alleging a violation of his constitutional rights during a
9 workplace investigation. The suit named Navajo County and several county employees,
10 including Sheriff Clark, as defendants. The complaint contained allegations that Sheriff
11 Clark had reviewed the investigation and made two statements generally standing by and
12 commending his department's work. *Id.* at 524. The district court had found that
13 sufficient to state a claim against the Sheriff on the theory that he had ratified a
14 subordinate's unconstitutional action. *Id*. The Ninth Circuit reversed, explaining that
15 the Sheriff's statements did not show that he had directed or knew of the subordinate's
16 alleged unconstitutional acts. *Id*. at 524-25. Moreover, the court pointed out that
17 "neither the Supreme Court nor our circuit has established that an official's post-incident
18 ratification of or acquiescence to a claimed constitutional violation is alone sufficient for
19 individual liability under § 1983." *Id*. at 525-26.

20 Even assuming ratification is a valid theory, Plaintiff has not adequately alleged
21 that Warden Van Winkle, former Director Ryan, or Director Shinn ratified any invidious
22 discrimination. First, she has not alleged that any of them knew of a constitutional
23 violation, except in broad generalizations. It is well settled that conclusory allegations
24 are not entitled to any assumption of truth. In *Iqbal*, for example, the Court said that
25 allegations that Attorney General Ashcroft and FBI Director Mueller "knew of,
26 condoned, and willfully and maliciously agreed to subject [the plaintiff] to harsh
27 conditions" should be disregarding as 'nothing more than a 'formulaic recitation of the
28 elements' of a constitutional discrimination claim." 556 U.S. at 680. Similarly, the

1 Ninth Circuit discounted the plaintiffs' "wholly conclusory allegation that the
2 supervisory defendants 'personally reviewed and, thus, knowingly ordered, directed,
3 sanctioned or permitted' the allegedly unconstitutional stops" by Border Patrol agents.
4 *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012). Plaintiff's conclusory
5 allegations here that Van Winkle, Ryan, and Shinn knew of the alleged culture of sexual
6 harassment and of McClelland's alleged propensity of inappropriate sexual behavior
7 must also be disregarded.

8 The Complaint contains no allegations that plausibly suggest that Van Winkle,
9 Ryan, or Shinn had any contemporaneous knowledge of the sexual harassment she
10 allegedly experienced. It alleges that she was subjected to two sexual assaults, one in
11 early 2019 and one in September 2019. (Compl., ¶¶ 36-45.) But Plaintiff also
12 acknowledges that she did not report the alleged assaults. (*Id.*, ¶ 46.) There is nothing in
13 the Complaint to indicate how any of the supervisory Defendants could have known of
14 the alleged assaults; Defendant Shinn was not even employed by the Department when
15 they allegedly occurred. So far as appears in the Complaint, no one complained of sexual
16 harassment until July 2020, when a nurse made a report about McClelland. (*Id.*, ¶ 61.)
17 After that, Plaintiff came forward to report her experiences with McClelland. (*Id.*, ¶ 62.)
18 By that time, Defendant Ryan had been retired for nearly a year. Because Plaintiff has
19 not adequately alleged that Van Winkle, Ryan, or Shinn had knowledge, her ratification
20 claim against them must fail. *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999)
21 (without supervisor's knowledge of constitutional violation, there is no ratification and
22 no supervisory liability).

23 In addition knowledge, ratification requires some allegation of a supervisor's
24 conscious, affirmative choice to approve a subordinate's unconstitutional action. For
25 ratification to occur, a policymaker (or supervisor) must approve a subordinate's
26 decision or action and the basis for it. *Gillette*, 979 F.2d at 1348. In that case, a city
27 manager did not overrule the fire chief's decision to terminate the plaintiff, but because
28 there was no evidence that the city manager made a deliberate choice to endorse the

8

decision and the basis for it, there was no ratification. *Id.*; *see also Estate of Adkins v. County of San Diego*, 384 F. Supp.3d 1195, 1206-07 (S.D. Cal. 2019) (finding that alleged failure to investigate tasing incident was not affirmative or deliberate choice by sheriff to ratify officers' actions). Because Plaintiff has provided no allegation that Warden Van Winkle, former Director Ryan, or Director Shinn made a deliberate choice to approve the alleged harassment of Plaintiff and the basis for it, her ratification claim is insufficient.

### 2. Step Two: Van Winkle, Ryan, and Shinn Did Not Violate any Clearly Established Rights.

Even assuming for the sake of argument that Plaintiff has adequately alleged a constitutional violation, the Defendants are entitled to qualified immunity because their alleged conduct did not deprive Plaintiff of any rights that were clearly established. A state official's conduct violates clearly established law when, at the time of the challenged conduct, the "contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

As discussed above, Plaintiff claims that that Warden Van Winkle, former Director Ryan, and Director Shinn knew of and acquiesced in the sexual harassment she allegedly experienced, thereby ratifying unconstitutional sex discrimination in violation of the Equal Protection Clause. She does not allege that these Supervisory Defendants took any affirmative action to ratify the alleged harassment.

In *Hunt*, the Ninth Circuit said the law was not clearly established that an official's post-incident ratification or acquiescence to a claimed constitutional violation was sufficient for individual liability under § 1983. 749 F. App'x at 525-26. The claim here against Van Winkle, Ryan, and Shinn is predicated on post-incident ratification. In light of the Ninth Circuit's recognition that the law is not clearly established, the Supervisory Defendants' alleged ratification was not clearly unlawful. They are therefore entitled to qualified immunity.

9

1       Alternatively, they are entitled to qualified immunity because it is not clear that any ratification occurred. Ratification requires a supervisor's deliberate choice to approve a subordinate's unconstitutional action and the basis for it. *Gillette*, 979 F.2d at 1348. The Complaint alleges inaction but provides no allegations that Van Winkle, Ryan, or Shinn made a conscious decision to approve a subordinate's action or the basis for it. Assuming Plaintiff was subjected to unconstitutional discrimination by a subordinate of the Supervisory Defendants, reasonable officials in their positions objectively could have believed that they did not ratify the conduct.

      Also, a claim of unconstitutional discrimination requires specific intent. *Iqbal* expressly held that knowledge and acquiescence are insufficient to establish a supervisor's discriminatory intent. 556 U.S. at 677. A reasonable supervisor could thus that alleged knowledge and acquiescence is not unconstitutional.

## III. Conclusion

      To maintain a § 1983 action against a State official, Plaintiff must allege that the official's "own misconduct" violated her constitutional rights. Plaintiff has not alleged that Warden Van Winkle, former Director Ryan, or Director Shinn engaged in or ratified purposeful discrimination, or that they engaged in clearly unlawful conduct. For these reasons, the Supervisory Defendants are entitled to qualified immunity and the Complaint against them should be dismissed.

      RESPECTFULLY SUBMITTED this 2nd day of April, 2021.

                                   Mark Brnovich
                                   Attorney General

                                   s/ Michael Goodwin
                                   Michael K. Goodwin
                                   Assistant Attorneys General
                                   Attorneys for Defendants

1  I certify that I electronically transmitted the attached document
2  to the Clerk's Office using the CM/ECF System for filing, which
3  generates a Notice of Filing to the following CM/ECF registrants on this
4  2nd day of April, 2021:

5  Anne E. Findling, Esq.
   Lauren E. Channell, Esq.
6  ROBBINS & CURTIN, P.L.L.C.
   301 East Bethany Home Rd, #B-100
7  Phoenix, AZ 85012

8  
   Georgia A. Staton
   Ravi V. Patel
9  JONES, SKELTON & HOCHULI P.L.C.
10 40 North Central Avenue
   Phoenix, AZ 85004
11 Attorneys for Defendant Jason McClelland

12 s/ Deb Czajkowski
   #9396934