Anne E. Findling, Esq. (010871)
Lauren E. Channell, Esq. (033484)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home Road, #B-100
Phoenix, Arizona 85012
Tel: 602-285-0100
Fax: 602-265-0267
anne@robbinsandcurtin.com
lauren@robbinsandcurtin.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Brittney Fountain, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>State of Arizona, a body politic; Jason McClelland, an individual, on his own behalf and on behalf of his marital community; Jeffrey Van Winkle, an individual, on his own behalf and on behalf of his marital community; Charles Ryan, an individual, on his own behalf and on behalf of his marital community; and David Shinn, on his own behalf and on behalf of his marital community,<br><br>Defendants. | No. 2:21-cv-00356-JJT<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS VAN WINKLE, RYAN, AND SHINN'S MOTION TO DISMISS**<br><br>**Oral Argument Requested** |

Defendants Van Winkle, Ryan, and Shinn argue that Plaintiff is required to show that they acted with a "discriminatory purpose, that is, a specific intent to discriminate" against her. Dkt. 21, p. 6. Defendants misstate what is required at the pleading stage in the highly gender-specific context of workplace sexual harassment. The Ninth Circuit has affirmed, post-*Iqbal*, that "[s]exual harassment violates the Equal Protection Clause because, by definition, it is 'motivated by gender.'" *Sampson v. County of Los Angeles by & through Los Angeles County Dep't of Children & Family Services*, 974 F.3d 1012, 1023 (9th Cir.

2020) (quoting *Bator v. State of Hawai'i*, 39 F.3d 1021, 1027 (9th Cir. 1994)). To state a claim against supervisors for failing to prevent or correct sexual harassment in the workplace, a plaintiff need only plead allegations, not direct evidence, that would allow a trier of fact to make the inference that the supervisors acted with discriminatory intent. *See Alaska v. EEOC*, 564 F.3d 1062, 1068-69 (9th Cir. 2009); *Burhans v. Lopez*, 24 F. Supp. 3d 375, 383-84 (S.D.N.Y. 2014).

Plaintiff is not seeking to hold Van Winkle, Ryan, and Shinn vicariously liable for McClelland's conduct and is not asserting a theory akin to municipal liability, as Defendants suggest. Plaintiff alleges that Van Winkle, Ryan, and Shinn violated her right to equal protection by acquiescing in and ratifying *de facto* policies at Arizona State Prison Complex – Florence Central Unit whereby a blind eye was turned in response to sexual harassment and victims were deterred from, or even retaliated against, for reporting harassment.

Plaintiff's Complaint alleges facts, including other instances of McClelland's workplace harassment, that, if proven true, will demonstrate that Van Winkle, Ryan, and Shinn ratified or condoned *de facto* policies which they knew placed female prison employees at a risk for harm, harassment, and discrimination. A reasonable jury could infer that these *de facto* policies, as much as McClelland's individual actions, caused the violation of Plaintiff's rights under the Equal Protection Clause. Defendants' motion to dismiss should therefore be denied.

I. **Factual Background**

A. **Defendants Van Winkle, Ryan, and Shinn acquiesced in and condoned *de facto* policies at ASPC-Florence Central Unit which violated Equal Protection.**

In Plaintiff's Complaint, she alleges a single § 1983 claim against Warden Van Winkle, former Director Ryan, and Director Shinn[1] for violation of her right under Equal

---

1 Defendant Charles Ryan was the Director of ADOC from approximately 2009 through September 2019, the month in which McClelland sexually assaulted Plaintiff for the second time. Defendant David Shinn has been the Director of ADOC since October 2019, during which time Plaintiff was subjected to months of verbal sexual harassment from co-workers

Protection to be free from sexual harassment by public officials in the workplace. Complaint, Dkt. 1, ¶¶ 97-107. Plaintiff alleges that Van Winkle, Ryan and Shinn knew of the pervasive culture of sexual harassment within ASPC-Florence Central Unit and knew that Jason McClelland in particular had a propensity for inappropriate sexual misconduct toward his female co-workers and subordinates. *Id.*, ¶¶ 99-100. Van Winkle, Ryan, and Shinn acquiesced in or ratified widespread customs within ASPC-Florence Central Unit which allowed sexual harassment to persist and which violated Plaintiff's right to Equal Protection. *Id.*, ¶¶ 104-107.

Plaintiff also alleges that Van Winkle, Ryan, and Shinn were aware of two widespread customs at ASPC-Florence Central Unit: (1) that supervisors and command staff would turn a blind eye and decline to take action in response to sexual harassment and (2) that victims were deterred from reporting sexual harassment because the "informal resolution process" for handling employee complaints was easily manipulated by supervisors and victims were concerned they would be retaliated against if they made a report. *Id.*, ¶¶ 52-53, 101-103.

Evidence of these customs, and Defendants' acquiescence, is established through allegations that:

- Defendants Van Winkle, Ryan, and Shinn were aware of McClelland's history and propensity for inappropriate sexual behavior toward female co-workers and subordinates, including Plaintiff. *See id.*, ¶¶ 99-100.
- Prison command staff, which included Warden Van Winkle, knew that McClelland had sexual relationships with several female staff over the years, some of whom sought transfers or resigned after being victimized. *Id.*, ¶¶ 26, 28.

---

and supervisors and threatened with the possibility of being reprimanded if she discussed McClelland's misconduct. *See* Complaint, Dkt. 1, ¶¶ 6-7, 35-45, 47-49, 59, 71, 73-74.

- Prison command staff knew that McClelland was openly and inappropriately flirtatious, that he would prey on young female staff members whom he perceived to be vulnerable, and that he would not accept "no" for an answer. *Id.*, ¶¶ 26-27.
- After he assaulted Plaintiff, McClelland spread rumors around the prison that she was promiscuous, and other male staff and supervisors, including at least one other sergeant, joined in verbally harassing Plaintiff for months. *Id.*, ¶ 47-50, 59, 71.
- McClelland was never reprimanded for this behavior. In fact, he was well-liked, popular, and respected by his supervisors, and the "boys will be boys" culture that existed within the prison allowed his sexual proclivities to go unchecked. *Id.*, ¶¶ 20, 29, 54, 65-66, 69, 105.
- McClelland's sexual harassment was ongoing from the time he began his employment in 2014 until his arrest in August 2020. *Id.*, ¶¶ 17-19, 35-45, 60.
- One of Plaintiff's shift lieutenants also had his own history of sexual harassment yet was able to remain in a supervisory position. *Id.*, ¶ 51.
- ADOC's "informal resolution" process allowed supervisors to dispose of complaints written about themselves or manipulate the outcome in their favor while not documenting (or inaccurately documenting) the matter to claim probable deniability later, and Van Winkle, Ryan, and Shinn were aware of this and knew that it deterred sexual harassment victims from using this procedure to report their experiences. *Id.*, ¶¶ 52-53, 102-103.

These customs within ASPC-Florence Central Unit are also supported by the experience of Plaintiff herself. When the ADOC Criminal Investigations Unit (CIU) began to investigate McClelland after Plaintiff and several other female staff members reported his harassment in July 2020, McClelland was allowed to continue working at ASPC-Florence Central Unit without restrictions. *Id.*, ¶ 61-63, 65. Defendants Warden Van Winkle and Director David Shinn did not terminate McClelland or take corrective action against him but decided to transfer him to another complex, ASPC-Eyman, where he would remain in a

supervisory position without restrictions. *Id.*, ¶¶ 69, 105. After McClelland's arrest, Defendant Van Winkle contacted Plaintiff's investigator and told him to let Plaintiff know he had people watching her social media accounts and threatened to bring Plaintiff to his office and reprimand her if she did not refrain from posting on social media. *Id.*, ¶ 73. Plaintiff was also given a directive that she was not allowed to discuss the matter with anyone, yet her co-workers were not given the same directive and were able to discuss the matter freely. *Id.*, ¶ 74.

Van Winkle, Ryan, and Shinn knew that these customs placed female prison employees at risk for harm, harassment, and discrimination. *Id.*, ¶ 106. But by failing to prevent and correct workplace sexual harassment, Van Winkle, Ryan, and Shinn acquiesced in, condoned, or ratified these widespread customs within ASPC-Florence Central Unit to such an extent that they became *de facto* policies which were violative of Plaintiff's right to Equal Protection. *Id.*, ¶¶ 104-107.

## II. <u>Legal Analysis</u>

### A. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8's pleading standard does not require "detailed factual allegations" but demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" or a "formulaic recitation of the elements of a cause of action" without any factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In other words, the plausibility standard simply "asks for more than a sheer possibility" that a defendant acted unlawfully. *Id.*

**B. Defendants Van Winkle, Ryan, and Shinn are not entitled to qualified immunity.**

**1. The allegations in Plaintiff's Complaint, taken as true, establish that Van Winkle, Ryan, and Shinn violated Plaintiff's right under equal protection to be free from sexual harassment by public officials in the workplace.**

In *Ashcroft v. Iqbal*, the Supreme Court addressed the pleading standards for a *Bivens* claim alleging that supervisory officials adopted post-September 11th detention policies that were intentionally discriminatory because federal officials had arrested and detained thousands of Arab Muslim men. 556 U.S. 662, 681. The Supreme Court held that because the legal standard at issue required showing proof that the supervisors acted with discriminatory intent, a plaintiff seeking to meet that standard had to plead "sufficient factual matter to show that [the supervisors] adopted and implemented the detention policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin." *Id.* at 677.

Plaintiff here does not allege that Van Winkle, Ryan, and Roberts engaged in purposeful discrimination on account of her race, religion, or national origin. Federal courts have affirmed, post-*Iqbal*, the long-standing rule that discriminatory intent on the basis of sex may be inferred from allegations that supervisors were aware of sexual harassment and failed to address it. *See T.E. v. Grindle*, 599 F.3d 583, 588–89 (7th Cir. 2010) (concluding that jury could infer intent to discriminate from principal's downplaying of and failure to attempt to stop harassment); *Burhans v. Lopez*, 24 F. Supp. 3d 375, 383–84 (S.D.N.Y. 2014) (holding allegations that supervisor knew of sexual harassment, shirked his responsibility to address it, and created a policy or custom in which New York Assembly employees were permitted to sexually harass employees were sufficient to establish discriminatory intent).

In *Alaska v. EEOC*, the Ninth Circuit examined whether a plaintiff had alleged intentional discrimination in an equal protection claim against the State of Alaska. 564 F.3d 1062, 1068-69 (9th Cir. 2009), *disapproved of on other grounds by Fairley v. Andrews*, 578 F.3d 518 (7th Cir. 2009). The plaintiff had alleged that her "male counterparts" in the Alaska governor's office sexually harassed her in the workplace and made inappropriate jokes and

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax: (602) 265-0267

unsolicited physical contact with her. She also alleged that she had been retaliated against for reporting the harassment.

The court noted that the plaintiff had not alleged that the governor's office intentionally discriminated against her through an official policy but that the office could nevertheless have violated the Equal Protection Clause "by intentionally refusing to redress the sexual harassment of [the plaintiff] by another employee." *Id.* at 1069. The plaintiff had alleged that she reported the sexual harassment and that the governor's office "responded by punishing her, rather than disciplining her harasser," and that "alleged conduct, if true, would constitute intentional sexual discrimination by the state." *Id.*

In *Burhans v. Lopez*, two legislative aides sued a New York State Assemblyman who had sexually harassed them and Sheldon Silver, the Speaker of the Assembly, alleging gender discrimination and hostile work environment under the Equal Protection Clause. 24 F. Supp. 3d 375, 378 (S.D.N.Y. 2014). The plaintiffs alleged that Silver "through his actions and his acquiescence" established a culture that fostered the violation of the plaintiff's right to a workplace free of gender-based discrimination. *Id.* at 375. According to the plaintiff's complaint, Silver knew of at least three other instances of sexual harassment involving the Assemblyman but failed to discipline him or take corrective measures to protect other employees. *Id.* at 378, 382.

Silver filed a motion to dismiss, arguing in part that the plaintiffs had not alleged that he acted with discriminatory intent. *Id.* at 383-84. The district court rejected this argument, explaining:

> Plaintiffs' claims that Silver knew of previous sexual harassment complaints and shirked his legal responsibility to adequately address them and that he created a policy or custom in which Assembly officials were permitted to sexually harass employees are sufficient to establish intent.
>
> To the extent that Silver argues that Plaintiffs have not alleged that he discriminated against them specifically on the basis of their sex, Silver misapprehends what is required at this stage. The Second Circuit has explained that:
>
> A plaintiff pursuing a sex-based hostile work environment claim "must always prove that the conduct at issue was not merely tinged with offensive

connotations, but actually constituted discrimination because of sex." **In many cases, this task is made easy when the "victim is harassed in such sex-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace."**

Even after discovery is complete, direct evidence of discriminatory intent is difficult to muster, and **the trier of fact must often infer such intent based on circumstantial evidence**. At the motion to dismiss phase, to keep their claims alive, Plaintiffs need only provide well-pleaded factual allegations, not evidence, of Silver's discriminatory actions and intent. Plaintiffs have done so.

*Id.* (citations omitted). *Sampson v. County of Los Angeles by & through Los Angeles County Dep't of Children & Family Services*, 974 F.3d 1012, 1023 (9th Cir. 2020) ("Sexual harassment violates the Equal Protection Clause because, by definition, it is 'motivated by gender.'"); *Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1383 (N.D. Cal. 1997) (holding plaintiff student pled adequate facts that school principal was on notice of peer sexual harassment and failed to take steps to remedy it because, "in the context of sexual harassment . . . [the] alleged failure to act is significant because it may constitute evidence of [the] intent to discriminate on the basis of sex").

Like the plaintiffs in *Alaska v. EEOC* and *Burhans*, Plaintiff here has alleged that Van Winkle, Ryan, and Shinn were aware of McClelland's history of inappropriate sexual behavior and harassment in the workplace but failed to take action to correct or prevent it. Dkt. 1, ¶¶ 26, 99-100, 104-105. In addition, after Plaintiff and several other women reported that McClelland had assaulted them, Van Winkle and Shinn did not terminate, suspend, or even reprimand him. *See id.* at ¶¶ 69, 105. They instead allowed him to continue working, without restrictions, alongside the women he had attacked, and ultimately decided to move him to a different prison where he would still be in a supervisory position. *See id.* at ¶¶ 65-66, 69, 105. Even after McClelland was arrested on multiple criminal charges, he was permitted to voluntarily resign. *See id.* at 76.

Plaintiff also alleged that Van Winkle, Ryan, and Shinn were aware that victims of sexual harassment were deterred from utilizing the informal resolution process to report harassment because supervisors against whom complaints were filed could alter or

manipulate the process in their favor, and victims feared they would be retaliated against for making a report. *Id.* at ¶¶ 52-53, 102-103. Plaintiff's concerns of retaliation were justified because, after she and other women reported their experiences and McClelland was arrested, Van Winkle[2] threatened to reprimand Plaintiff if she spoke about the incidents on social media. *Id.* at ¶¶ 73-74. While Plaintiff was threatened with reprimand, her harasser was not disciplined at all. These alleged facts, if true, establish intentional discrimination on account of Plaintiff's sex. *Alaska*, 564 F.3d at 1069. At the pleading stage, Plaintiff has met her burden to set forth well-pleaded allegations from which a jury could infer that Van Winkle, Ryan, and Shinn were motivated by general hostility toward women in the workplace. *Burhans*, 24 F. Supp. 3d at 383-84.

### 2. The right under Equal Protection to be free from sexual harassment by public officials in the workplace is clearly established.

For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). This requirement "does not mean that the very action at issue must have been held unlawful before qualified immunity is shed." *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007) (quoting *Wall v. County of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004)). Public officials "can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741; *see also Cunningham v. Gates*,

---

2 Warden Van Winkle was notably much more closely situated to the facts alleged in Plaintiff's Complaint than either former Director Ryan or Director Shinn. As the Warden of ASPC – Florence, he was present onsite and responsible for overseeing day-to-day operations. McClelland's sexually explicit workplace conduct was common knowledge among all at the prison, and Van Winkle knew this. *See* Dkt. 1, ¶¶ 26-27, 29, 101. Van Winkle would also have known when McClelland's victims resigned or sought reassignment or transfer. *See id*. at ¶ 28. Van Winkle's proximity to and knowledge of McClelland's history of sexual harassment, coupled with his threats toward Plaintiff to silence her from speaking about her experience, are more than sufficient to support the inference that Van Winkle purposefully discriminated against Plaintiff on account of her gender. *See Alaska*, 564 F.3d at 1069. Thus, even if the Court is inclined to grant Defendants' Motion to Dismiss with respect to Ryan and Shinn, it should deny the Motion with respect to Van Winkle.

229 F.3d 1271, 1288 (9th Cir. 2000), *as amended* (Oct. 31, 2000) (providing that courts "must not allow an overly generalized or excessively specific construction of the right" to guide this analysis).

The right under the Equal Protection Clause to be free from sexual harassment by public officials in the workplace has been clearly established by Supreme Court and Ninth Circuit case law for decades. *Sampson*, 974 F.3d at 1024 (citing *Alaska*, 564 F.3d at 1068-69); *Bator v. State of Hawai'i*, 39 F.3d 1021, 1028-29 (9th Cir. 1994) (holding that female probation department employee's right to be free of workplace sexual harassment was clearly established as of the early 1980s and that a reasonable state official would have understood this during the employee's tenure); *Lindsey v. Shalmy*, 29 F.3d 1382, 1386 (9th Cir. 1994) (noting that a reasonable official in 1988 would have understood that unfavorably altering a female employee's job assignments and performance evaluations would have violated her clearly established constitutional rights, provided that the actions were taken because of her gender).

There is no question that a reasonable official in the place of Van Winkle, Ryan, and Shinn would have understood that their conduct violated equal protection in 2019 and 2020. In *Alaska v. EEOC*, the Ninth Circuit recognized in 2009 that senior governor's office officials violated the Equal Protection Clause by failing to redress sexual harassment and by punishing the female victim rather than male harasser. *Alaska*, 564 F.3d at 1069. Thus, for at least a decade before the events in this case occurred, it was clearly established that supervisory officials violated the Equal Protection Clause by acquiescing in or failing to correct or prevent workplace sexual harassment.

**C. If the Court grants Defendants' motion, leave to amend should also be granted.**

Undersigned counsel believes that the Complaint sufficiently alleges a § 1983 claim against Van Winkle, Ryan, and Shinn to proceed with discovery. The evidence regarding their conduct is in the hands of Defendants, and no discovery has been conducted. If the

Court concludes that dismissal of Plaintiff's claim against Van Winkle, Ryan, and Shinn is appropriate, it should grant Plaintiff leave to amend her claims solely as to those Defendants.

Rule 15(a) establishes a strong presumption in favor of granting requests for leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003); *see also Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999) (reviewing denial of leave to amend "strictly" in light of strong public policy in favor of permitting amendments). Courts consider five factors in deciding whether to grant leave to amend: (1) undue delay in seeking amendment; (2) repeated failure to cure deficiencies by prior amendment; (3) undue prejudice to the opposing party; (4) bad faith or dilatory motive; and (5) futility of amendment. *See Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1119-20 (N.D. Cal. 2011). This case is in the earliest stages, no discovery has been completed, and there have been no previous amendments. If amendment were permitted, there would be no undue delay or prejudice, no repeated failure to cure deficiencies, no bad faith or dilatory motive, and amendment would not be futile.

### III. Conclusion

Plaintiff's complaint makes detailed factual allegations that go well beyond merely reciting the elements of a claim under the Equal Protection Clause. These allegations are neither "bald" nor "conclusory," and are therefore entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681. Plaintiff should be permitted to proceed on her claims against Van Winkle, Ryan, and Shinn, and their motion to dismiss should be denied.

If, however, the Court does dismiss Plaintiff's claims against Van Winkle, Ryan, and Shinn, it should grant leave to amend as to those claims.

RESPECTFULLY SUBMITTED: May 7, 2021.

ROBBINS & CURTIN, PLLC

By: /s/ Lauren E. Channell
Anne E. Findling
Lauren E. Channell
*Attorneys for Plaintiff*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0100 ♦ Fax: (602) 265-0267

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing thereby transmitting a Notice of Electronic Filing to all CM/ECF registrants.

Office of the Arizona Attorney General
Michael K. Goodwin, Ass't. Attorney General
2005 North Central Avenue
Phoenix, AZ   85004-1592
(Email: Michael.goodwin@azag.gov)
*Attorneys for Defendants State of Arizona,*
*Ryan, Shinn, Van Winkle*

Georgia A. Staton, Attorney;
Ravi V. Patel, Attorney
JONES, SKELTON & HOCHULI
40 North Central
Phoenix, AZ    85004
(Email: gstaton@jshfirm.com
rpatel@jshfirm.com)
*Attorneys for Defendant McClelland*

By:  /s/ Cricket Bourget