**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Brittney Fountain,

Plaintiff,

v.

State of Arizona, *et al.*,

Defendants.

No. CV-21-00356-PHX-JJT

**ORDER**

At issue is the Motion to Dismiss Count Three of Plaintiff's Complaint (Doc. 21, Mot.) filed by Defendants Jeffrey Van Winkle, Charles Ryan, and David Shinn. The Court has considered Plaintiff's Response (Doc. 29, Resp.) and Defendants' Reply (Doc. 30, Rep.) and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). Because Plaintiff cannot establish that Defendants intentionally discriminated against her in violation of the Fourteenth Amendment prior to her reports of harassment and assaults, Count Three of the Complaint is dismissed as to Ryan. The Court grants Plaintiff leave to amend Count Three with respect to the post-reporting allegations against Shinn and Van Winkle.

## I. BACKGROUND

Plaintiff Brittney (Goodman) Fountain filed a Complaint alleging a 42 U.S.C. § 1983 claim against Defendants Jeffrey Van Winkle, Charles Ryan, and David Shinn. (Doc. 1, Compl. ¶¶ 97-107.) Plaintiff was employed by Arizona Department of Corrections ("ADOC") as a correctional officer at ASPC-Florence Central during the relevant period.

(Compl. ¶ 2.) Van Winkle served as the Warden at ASPC-Florence, Ryan was the Department's Director until September 2019, and Shinn became the Department's Director in October 2019. (Mot. at 3.) Defendant Jason McClelland was hired by ADOC in approximately 2014 and worked as a correctional officer at the ASPC–Florence Central Unit. (Compl. ¶ 15.)

Plaintiff's claims arise out of two alleged instances of sexual assault committed by McClelland against Plaintiff. (Compl. ¶¶ 33-45.) The first assault took place in January or February 2019, and the second occurred in September 2019. (Compl. ¶ 35.) Plaintiff "did not immediately report the assaults out of concern and fear of retaliation." (Compl. ¶ 46.) Plaintiff alleges that "[b]ecause Defendant McClelland was so favored and well-liked among the prison staff, Plaintiff was concerned that others would not believe her or would retaliate against her if she reported the incidents." (Compl. ¶ 46.) After the assaults occurred, Plaintiff alleges that McClelland and other staff members "created a hostile work environment where Plaintiff was subjected to egregious and humiliating harassment for months." (Compl. ¶¶ 47-60.) This included verbal harassment by other staff members and alleged rumors regarding Plaintiff's reputation. (Compl. ¶¶ 47-60.) Plaintiff did not report past abuse or ongoing harassment out of continued fear of retaliation. (Compl. ¶ 52.)

Plaintiff further alleges that ADOC maintained an "informal resolution" policy, which "allowed supervisors to dispose of paperwork or complaints written about them or alter the documents to benefit themselves." (Compl. ¶ 53.) According to Plaintiff, this was the process utilized when harassment was reported. (Compl. ¶ 53.) This process "allowed supervisors to manipulate the outcome to their liking and consider the matter resolved while not documenting (or inaccurately documenting) the matter to claim probable deniability later." (Compl. ¶ 53.) Plaintiff states that "it was well known among prison staff, including other sergeants and supervisory personnel, that Defendant McClelland was overly flirtatious and inappropriate in the workplace and that he had sexual relationships with several staff members over the years," and that "it was also well known among staff that Defendant McClelland would prey on young female staff members who he perceived

to be vulnerable and easy to coerce and that he would not accept 'no' for an answer." (Compl. ¶¶ 26-27.) According to Plaintiff, the "'boys will be boys' culture that existed within the prison allowed his sexual proclivities to go unchecked." (Compl. ¶ 29.)

On July 15, 2020, ADOC's Criminal Investigations Unit ("CIU") began investigating McClelland in connection with an assault reported by another prison employee. (Compl. ¶ 61.) Plaintiff reported her assaults and harassment at that time. (Compl. ¶ 62.) Plaintiff allegedly continued to experience an "unsafe and hostile work environment" after reporting the abuse. (Compl. ¶ 66.) McClelland was arrested on August 6, 2020, and "the prison staff's harassment of Plaintiff began to escalate" at that time. (Compl. ¶¶ 70-71.)

Plaintiff alleges that "people began to post news articles about the arrest to Plaintiff's social media page." (Compl. ¶ 72.) Van Winkle allegedly contacted Plaintiff's investigator in response to these social media posts and informed the investigator that "he had people watching her social media," threatening "to bring Plaintiff to his office and reprimand her if she did not stay off social media." (Compl. ¶ 73.) At the time, Van Winkle "had immediate supervisory authority over Plaintiff." (Compl. ¶ 75.)

## II. LEGAL STANDARD

When analyzing a complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

### A. Legal Standard – § 1983 Equal Protection Claim

Section 1983 grants every person a right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, § 1983 is "not itself a source of substantive rights." *Sampson v. Cnty. of Los Angeles by and through Los Angeles Cnty.*, 974 F.3d 1012 (9th Cir. 2012). To state a § 1983 claim, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States," committed by "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

To state a § 1983 claim alleging violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiff "must show that the defendants acted with an intent or purpose to discriminate" against her based upon her inclusion in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194 (1998). Finding intentional discrimination "requires more than 'intent as volition or intent as awareness of consequences.'" *Iqbal*, 556 U.S. at 676 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

A government employee alleged to have committed a § 1983 violation is protected from liability by qualified immunity unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether qualified immunity

applies, the court looks at (1) whether Plaintiff has sufficiently pled a violation of a constitutional right, and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

**B. Plaintiff has not sufficiently pled a constitutional violation**

**1. Plaintiff cannot show intentional discrimination prior to reporting the harassment and assaults**

Plaintiff's allegations that Defendants facilitated the ongoing existence of practices or policies that were generally discriminatory fall under a municipal theory of liability established in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978). The Court in *Monell* stated that:

> Local governing bodies [] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover. . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Id.* at 690-91. Liability under § 1983 may not stem from a *respondeat superior* theory of liability but must arise out of municipal policies that caused the constitutional violation. *Id.* at 691.

Plaintiff explicitly rejects the characterization that her claims fall under a theory of municipal liability, instead alleging her claims fall under a ratification theory. (Resp. at 2.) A ratification theory of liability requires finding

> evidence of a conscious, affirmative choice . . . where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."

*Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)). Although "acquiescence in a subordinate's constitutional violation" may result in liability for their supervisor, this requires "a sufficient causal connection" between the violation and the supervisor's conduct. *Hunt v. Davis*, 749 Fed. App'x 522, 524 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). A supervisor must participate in, direct, or know of the violations and fail to prevent them to be held liable under Plaintiff's ratification theory of liability. *Hunt*, 749 Fed. App'x at 524 (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

Defendants are correct that the Supreme Court has explicitly rejected this theory of liability. In *Iqbal*, the respondent alleged a constitutional violation under a theory of "supervisory liability," in which the petitioners could "be held liable for 'knowledge and acquiescence in their subordinates' use'" of discriminatory practices and policies in the execution of their official duties. *Iqbal*, 556 U.S. at 677. The Court rejected this argument, finding that "a supervisor's mere knowledge of his subordinate's discriminatory purpose" could not support a claim of the supervisor's own constitutional violation. *Id.* Government officials are only liable for their own individual acts of misconduct, requiring a finding of purpose to discriminate to find liability under § 1983. *Id.*

Plaintiff argues that "discriminatory intent on the basis of sex may be inferred from allegations that supervisors were aware of sexual harassment and failed to address it."[1] (Resp. at 6 (citing *T.E. v. Grindle*, 599 F.3d 583, 588-89 (7th Cir. 2010)).) Crucially, the Ninth Circuit cases to which Plaintiff cites all involve instances in which the plaintiffs had reported the alleged sexual harassment to their supervisors, and the supervisors had failed to redress the abuse. (*See* Resp. at 6-8.) Here, Plaintiff concedes that she did not report the assaults or harassment to her supervisors until July 2020. (Compl. at 8.) Plaintiff has failed to cite any controlling case law indicating that she can demonstrate intentional discrimination in violation of the Fourteenth Amendment prior to reporting the assaults and harassment to her supervisors.

---

[1] Plaintiff cites to several out-of-circuit cases for this proposition. (*See* Resp. at 6.)

Because Plaintiff is unable to prove intentional discrimination by the supervisory Defendants prior to reporting the harassment and assaults, the Court must dismiss Plaintiff's claim against Ryan. He retired from his position as Department Director in September 2019, approximately ten months prior to Plaintiff reporting the assaults and harassment.

**2. Plaintiff's post-reporting claims are generally not cognizable under the Fourteenth Amendment**

To the extent that Plaintiff presents factual allegations of post-reporting retaliation by Van Winkle, Plaintiff's claims are not contemplated by the Equal Protection Clause of the Fourteenth Amendment. Plaintiff's allegations with respect to social media and her inability to discuss the ongoing investigation against McClelland come under the First Amendment's constitutional protections against retaliation and silencing. The Ninth Circuit recently stated (without deciding) that whether a retaliation claim could be brought under the Fourteenth Amendment is a "close question." *Ballou v. McElvain*, 2021 WL 4436213, at *10 (9th Cir. Sept. 28, 2021). Retaliation is cognizable under the First Amendment. *Id.* But Plaintiff has not claimed a First Amendment violation in the Complaint. Even if the Court were to find that Plaintiff's retaliation claim could be stated under the Fourteenth Amendment, it would not suffice to be a "clearly established" right, and Van Winkle would be protected by qualified immunity. Thus, insofar as Plaintiff alleges a retaliation or silencing claim under the Fourteenth Amendment, her claim against Van Winkle is dismissed.

Plaintiff has otherwise failed to sufficiently state post-reporting claims of intentional discrimination against Van Winkle and Shinn. However, Plaintiff has alleged that "[a]fter the arrest, the prison staff's harassment of Plaintiff began to escalate." (Comp. ¶ 70.) While this allegation is not sufficient to state a claim by itself, Plaintiff could plausibly include sufficient factual allegations to state a post-reporting claim. The Court will thus grant Plaintiff leave to amend with respect to Van Winkle and Shinn to, if possible, allege any intentional discrimination by them that took place after she reported the assaults and

harassment. *See Lopez v. Smith*, 203 F.3d 1122, 1127-30 (9th Cir. 2000) (holding that if a defective complaint can be cured, the plaintiff is entitled to amend before the court dismisses the claim).

**C. Even if Plaintiff alleged a constitutional violation, it is not clearly established**

Even if the Court accepted Plaintiff's pre-reporting ratification theory of a constitutional violation, Defendants are entitled to qualified immunity because Plaintiff has not shown they violated a clearly established constitutional right. A constitutional right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). This requires determining whether a government official had fair notice that their conduct would violate a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). While this does not "require a case directly on point," the right must be clearly established such that the question is beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Because there is no controlling case law supporting Plaintiff's pre-reporting ratification theory of liability, Plaintiff cannot show that a reasonable official in Defendants' positions would have been on notice that their conduct was unconstitutional. Thus, Plaintiff cannot demonstrate that a clearly established constitutional right was violated prior to reporting the assaults and harassment.

**D. Conclusions**

Plaintiff has failed to state a claim against Ryan, and the Court will thus dismiss Count Three with respect to Ryan. The Court grants Plaintiff leave to amend Count Three with respect to Shinn and Van Winkle, but only to the extent Plaintiff can make non-conclusory factual allegations of intentional discrimination supporting her claim of an Equal Protection violation after her reports of harassment and assaults.

**IT IS THEREFORE ORDERED** granting in part Defendants' Motion to Dismiss Count Three of Plaintiff's Complaint (Doc. 21). Plaintiff's claim against Defendant Charles Ryan is dismissed.

**IT IS FURTHER ORDERED** granting Plaintiff leave to amend Count Three against Defendants Jeffrey Van Winkle and David Shinn, but only as specified in this Order. Any Amended Complaint must be filed within 14 days of the date of this Order.

Dated this 27th day of October, 2021.

Honorable John J. Tuchi
United States District Judge